# Bessierre *v.* Ala. City G. & A. R. R. Co.

*Injury to Person on Track.*

(Decided November 21, 1912.   60 South. 82.)

1. *Street Railways; Crossing Accidents; Complaint.*—In an action against a street railway for death at a crossing counts based on simple negligence of defendant's motorman, but which fail to allege facts showing that intestate had any right to be on the track or near enough thereto to be struck by a passing car when he was struck and killed, were demurrable for failing to negative that intestate was a trespasser and hence that defendant's duty to him was otherwise than not to wantonly injure him or not to injure him after the discovery of his peril.

2. *Same.*—Where some of the alternative averments were insufficient in allegation of facts to show that intestate was not a trespasser they rendered the counts demurrable in an action for the death of a person by being struck by the street car when on or near the tracks.

3. *Same; Trespassers; Subsequent Negligence.*—A street railway company is not liable for the death of a person while trespassing on the track unless the injury was the result of wantonness or willfullness, or was caused by the subsequent negligence of the defendant's servants.

4. *Same; Contributory Negligence.*—As an answer to counts charging simple negligence pleas alleging that the decedent was on the track or carelessly walking along the road or crossing it without having stopped, looked or listened for an approaching car were good as pleas of contributory negligence.

5. *Same; Incompetency of Servant; Evidence.*—Where plaintiff claimed that the motorman in charge of the car which struck his intestate at the crossing was generally incompetent, evidence of different specific acts of negligence committed by the same motorman tending to show his incompetence was admissible.

6. *Same; Appeal and Error; Harmless Error; Pleadings.*—Where the counts to which demurrer was sustained were substantially duplicated by counts to which demurrer was overruled, no error prejudicial to plaintiff intervened.

7. *Evidence; Res Gestae; Declaration of Motorman.*—In an action for the death of a pedestrian struck by a street car at a crossing at night it is competent to show that as soon as the car had passed the crossing, or had gone a few feet beyond it, the motorman shut off his power, applied the brake, opened the door and exclaimed, "My God! I have killed a man," as a part of the res gestæ; this is true notwithstanding plaintiff might have called the motorman as his own witness to prove whether or not his car struck or killed plaintiff's intestate.

8. *Same; What Constitutes.*—The res gestæ rule authorizes the admission of such circumstances and declarations as are contemporaneous with the main fact under consideration and so closely connected with it as to illustrate its character. The term contemporaneous, however, does not necessarily mean co-incident, but merely requires that the circumstance or declaration be substantially at the same time as the main fact so that it will appear that the evidence offered has not the ear marks of a device or after thought, or a narrative of a transaction which is really and substantially passed.

APPEAL from Gadsden City Court.

Heard before Hon. JOHN H. DISQUE.

Action by Leonie Bessierre, as administratrix, etc., against the Alabama City, Gadsden & Attalla Railway Company. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

Count 1 is as follows: "Plaintiff claims of defendant the sum of $25,000 as damages for that, heretofore, to wit, the defendant was engaged in operating an elec-

tric street railway in the city of Gadsden, Ala., and the plaintiff avers that on said date, at or near a place commonly known as Brown's crossing or Brown's station, in said city of Gadsden, the defendant so negligently managed or operated one of its electric cars on said railway that the said car ran against plaintiff's intestate and killed him. Counts 2 and 3 are in wanton negligence. Count 4 alleges the place to have been a public crossing, and that Duncan, a motorman in the employment of the defendant, and acting as such at said time and place negligently, carelessly or recklessly ran said car against plaintiff's intestate and killed him." Count 5: Same as 1, with the addition of the allegation that the place was a public crossing, and that the defendant at said time and place negligently, carelessly, or recklessly operated one of its cars over and across said public street at said station or crossing without having said car equipped with a sufficient headlight, and thereby ran said car against plaintiff's intestate and killed him. Count 7: Same as 5, except that it is alleged that the defendant negligently, carelessly, or recklessly permitted one of its cars to approach said crossing at a high rate of speed in the nighttime without having said car in proper control, and while plaintiff's intestate was in the act of crossing said car struck him and killed him. Count 9 alleges the facts practically as formerly alleged with the further allegation that the place was a station where passengers were regularly taken aboard and discharged from plaintiff's cars, and after the hour of 7 o'clock in the evening, when it was dark, plaintiff's intestate was waiting to take passage on one of defendant's cars; that one Duncan, who was in the service of the defendant as motorman of the car, totally disregarded his duty to keep a lookout for those who might be waiting to take pas-

sage on said car at said crossing or said station, and totally disregarded his duty to stop said car at said crossing, in order that plaintiff's intestate might take passage thereon, willfully, wantonly, or intentionally ran said car across and by said crossing, and against plaintiff's intestate, and killed him. Count 10: Same as 4. Counts 14, 15, 16, and 17 were added by way of amendment. Count 14, after stating the facts as stated in count 4 and count 9, alleges that while plaintiff's intestate was in the act of taking passage on said car the defendant so negligently managed or operated one of its said cars on said railway that said car ran against said plaintiff's intestate and killed him, and said plaintiff averred that her damages were negligently caused as the proximate result of defendant's negligence. Count 15: Same as 14, except that it alleges the negligent want of a proper and sufficient headlight. Count 16: Same as 14, with the allegation that the motorman failed to keep a proper lookout, and that the damages were proximately caused by this negligence. Count 17: Same as 1, with the additional allegation that Brown's crossing or station was a place where cars regularly stop to take on and discharge passengers. The pleas which were filed to the counts charging simple negligence all alleged in varying phraseology that the decedent was on the track or carelessly walking along the track or crossing the track without having stopped, looked, or listened for an approaching car.

McCord, Roper, Inzer & Stephens, for appellant. The first count was sufficient.—*K. C. M. & B. R. R. Co. v. Flippo,* 138 Ala. 487; 5 Mayf. 714-15. Count ten was good and the court erred in sustaining the demurrers. —*K. C. M. & B. R. R. Co. v. Flippo, supra; Postal Tel. Co. v. Jones,* 133 Ala. 226; *Brent v. Baldwin,* 160 Ala.

235.  Count 11 was sufficient.—*B. R., L. & P. Co. r. Brown,* 152 Ala. 115; *Sou. Ry. Co. v. Weatherlow,* 153 Ala. 175; *A. G. S. R. R. Co. v. Burgess,* 114 Ala. 587; *M. & C. R. R. Co. v. Martin,* 117 Ala. 367.  Count 17 was certainly good.—*Postal Tel. Co. v. Jones, supra; American Bolt Co. v. Fennell,* 158 Ala. 484; *L. & N. R. R. Co. v. Church,* 155 Ala. 329; *B. R., L. & P. Co. v. Adams,* 146 Ala. 267.  The exclamation of the motorman was admissible as a part of the res gestæ of the killing and the court should have admitted it as such. —*A. G. S. R. R. Co. v. Hawk,* 72 Ala. 112; *Henderson v. The State,* 70 Ala. 23; *Gandy v. Humphreys,* 35 Ala. 617; 3 Conn. 250; 2 Allen, 136; *R. & B. R. R. Co. v. Hammond,* 93 Ala. 185; 7 Words & Phrases, 6130- 2-3-4-5; *L. & N. R. R. Co. v. Pearson,* 97 Ala. 214.  It being insisted that the motorman was generally incompetent different acts of incompetency could be shown.. —*L. & N. R. R. Co. v. Bizzell,* 131 Ala. 436; *Ala. S. & W. Co. v. Wren,* 136 Ala. 490; *B. R. & E. Co. v. Ellard,* 135 Ala. 449; *Ala. Lbr. Co. v. Keel,* 125 Ala. 658.  The affirmative charge therefore should not have been given. *McCormack Co. v. Lowe,* 151 Ala. 313 and authorities there cited.

O. R. Hood, for appellee.  The court properly sustained demurrers to certain counts of the complaint complained of, but if the counts were good no injurious error intervened because they were fully covered by the counts to which no demurrers were sustained. The track was not so imbedded in the street as to be a part of it.—*B. R., L. & P. Co. v. Jones,* 45 South. 192. Where counts charge simple negligence in a ᵥcrossing accident and do not negative the fact that the person injured was a trespasser they are subject to demurrer. —*Western Ry. Co. v. Russell,* 100 Ala. 490; *Ensley Ry.*

*Co. v. Chewning,* 93 Ala. 24. The counts charging wantonness fall short of the requirements of good pleading.—*Achor's Case,* 113 Ala. 640; *Burgess' Case,* 114 Ala. 583; *Freeman's Case,* 32 South. 778. On these authorities and the authorities there cited it must be held that the pleas of contributory negligence were good pleas as answers to the counts in simple negligence. Counsel discuss the admission and rejection of evidence and the giving and refusing of charges but without further citation of authority.

MAYFIELD, J.—This action is brought under the homicide statute to recover damages for the wrongful death of plaintiff's intestate. Intestate was dead when first found. So far as the record discloses, no one saw the killing, and none testified as to the agency which killed intestate. His body, when found, was lying about eight feet from the defendant's street car track at a road crossing which made a small fill on the car line. This crossing was used by the defendant as a stopping place for taking on and discharging passengers, when signaled or notified to stop, by passengers or by those desiring to become such. The deceased's body was found about 7:30 o'clock at night by servants or passengers on board one of defendant's cars which was going into the city of Gadsden, and from the steel plant which is near the city in question. The body was lying on this little fill at the crossing, the head in the opposite direction to that from which the car was going, the feet a little nearer the track than the head. The body showed wounds on the left side of the head and face. The left side of the body was on the ground; the face being towards the track. The car had passed the spot before the body (or the deceased) was discovered, so far as the record discloses. The distance which

the car traveled past the crossing in question before it was stopped was variously estimated to be from 60 feet to 150 feet. So far as the record discloses, there was no effort or intention to stop the car at the station until the deceased or his body was discovered by the motorman or the passengers; and the evidence is in a state of uncertainty as to this.

The plaintiff offered to prove by some of the passengers that as soon as the car had passed this crossing, or had gone a few feet, nine or ten feet beyond, the motorman shut off the power, threw on the brakes, and, opening the door, threw up his hands and exclaimed, "My God! I have killed a man." The court declined to allow this proof; and this is one of the many assignments of error insisted upon for a reversal. The body was lifeless when found, but was warm and bleeding.

At the conclusion of the trial the court, on motion of defendant's counsel, excluded all the evidence; and then, at his request in writing, instructed the jury that, if they believed the evidence (there being none, because it had been excluded), they would find for the defendant, which the jury accordingly did. From the judgment entered on the verdict this appeal is prosecuted by the plaintiff.

The assignments of error are well grouped by counsel, in argument, into three classes: First, those relating to rulings on demurrers to counts of the complaint, and to the special pleas of contributory negligence; second, those relating to the exclusion of evidence offered by plaintiff, and to the admission of that offered by defendant; and, third, those relating to the action of the court in excluding all the evidence and directing a verdict for the defendant.

We find no reversible error in the sustaining of the defendant's demurrer to any count of the complaint.

The complaint as last amended consisted of 17 counts. Demurrers were sustained to counts 1, 5, 9, 10, 14, 15, 16, and 17, and were overruled as to all others. Each of these counts was subject to one or more of the special grounds of demurrer interposed thereto. Without attempting to point out each ground to every count it is sufficient to treat them generally, as is done in briefs of counsel. Most of these counts, declaring on simple negligence in being stricken by a moving car, failed to sufficiently show any right of intestate to be on the track or near enough thereto to be struck by the car; and, construing the counts against the pleader, showed that he was a trespasser, and did not show or attempt to show injury on account of wantonness, willfulness, or subsequent negligence, and they were therefore subject to the demurrers taking this point or raising this question of law.

The true rule as to the sufficiency of counts in such cases was first and well stated in *Chewning's Case,* 93 Ala. 27, 9 South. 458. The only change (if change it could be called) which has been since made in the statement of the rule is in adding subsequent negligence to wantonness and willfulness as exceptions to the rule. The rule is thus stated in *Chewning's Case*: "Under our decisions a trespasser cannot maintain an action against a railroad company for injuries sustained while trespassing on its roadbed, unless such injuries were caused by reckless, wanton, or intentional negligence. If a complaint affirmatively shows that the plaintiff is a trespasser, an actionable injury is not shown unless alleged to have been caused recklessly, wantonly, or intentionally. The presumption of negligence of such character and degree does not arise from the mere fact of injury to a trespasser. The count, failing to aver any relation or connection between

plaintiff and defendant which creates the duty to use
the highest degree of care, should therefore be con-
strued as if he were an intruder. It may be that, had
the count averred the engine and train were run against
plaintiff by reckless, wanton, or intentional negligence,
it would have been held sufficiently certain—comport-
ing with our system of pleading—though no special
acts or omissions constituting the negligence were aver-
red. But when, in such case, the complaint avers sim-
ple negligence, it is insufficient, the same as if it had
affirmatively shown that plaintiff was a trespasser."
This case has been frequently followed.—*Georgia Pac.
R. Co. v. Ross,* 100 Ala. 490, 14 South. 282; *Haley,
Adm'r, v. Kansas City, M. & B. Ry. Co.,* 113 Ala. 640,
621 South. 357; *Lacey-Buck Iron Co. v. Holmes,* 164
Ala. 102, 51 South. 236. It is further said in *Chewn-
ing's Case*: "A general averment of negligence has
been held sufficient when the complaint averred that
the plaintiff sustained the relation of passenger to the
railroad company, or was an infant of tender years,
not capable of contributory negligence, or that the in-
jury was to stock.—*L. & N. R. R. Co. v. Jones,* 83 Ala.
376, 3 South. 902; *Mobile & Montgomery Railway Co.
v. Crenshaw,* 65 Ala. 556; *S. & N. Ala. R. R. Co.
v. Thompson,* 62 Ala. 494. The statement of either of
the foregoing facts has been regarded as a sufficient
averment of facts showing the duty to act; but in no
case, except in *Alabama & Florida R. R. Co. v. Waller,*
48 Ala. 459, has a general averment of simple negli-
gence been held sufficient, when not accompanied by an
averment of facts from which the duty originates." The
rule was thus stated in a recent decision.—*Holmes'
Case,* 164 Ala. 102, 51 South. 236. "The count should
state facts out of which duty springs, and allege a fail-
ure to perform that duty and an injury in consequence

thereof. Its sufficiency must be determined on the facts as alleged, from which the legal duty is deduced. It should show a duty on the part of defendant to do or not to do that of which it complains." In the case of *Martin v. Union Springs & N. R. Co.,* 163 Ala. 215, at page 219, 50 South. 897, at page 899, a complaint somewhat similar to this was considered; and therein the doctrine announced in *Chewning's Case* was adhered to, and that case cited. The following quotation from the opinion in the former case is applicable to the questions here involved: "To operate a train through a town, while it is dark, at a rate of speed prohibited by ordinance, does not, without more, constitute that wantonness which is the equivalent of intentional wrong. The conclusion which the pleader draws from these facts, that such operation of the train was wanton, is not to be sustained in law; for they are equally compatible with the conclusion that the train was so operated as the result of inadvertence or mere negligence. Nor can the counts be sustained as embodying a charge of simple negligence. They show necessarily that the plaintiff's intestate was on or in dangerous proximity to the track, and fail to show that he was not thereby a trespasser. Under these conditions, there was no duty to keep a lookout for the deceased, but only the duty not to injure him after discovering his peril."

The three counts in question (Nos. 14, 15, and 16) were also subject to the objection taken to them, that the allegations as to the presence of the deceased on or near the track, when stricken by the car, were in the alternative, and some of the alternatives were evidently not sufficient, and that this rendered the counts bad. Some of these alternatives were clearly not sufficient to keep the intestate from being a trespasser on the track.

—*Jones' Case,* 153 Ala. 157, 45 South. 179; *Chewning's Case,* 93 Ala. 24, 9 South. 458. None of the counts in question stated a. cause of action as for wantonness, negligence, or willful injury.—*Martin's Case,* 163 Ala. 215, 50 South. 897.

The special pleas of contributory negligence were not subject to any of the grounds of demurrers interposed thereto, and the court did not err ·in overruling the demurrer. The pleas, of course, must be referred to the counts declaring on simple negligence, to which they were alone addressed, and to each of which we think were sufficient answers. They attempted to set up the well-recognized and oft-declared defenses of contributory negligence in going upon a railroad track without stopping, looking and listening; and in attempting to board a car or train when it is moving at a dangerous speed. The pleas in terms each alleged facts which, if true (and on demurrer the allegation must be so treated), tended to show that intestate's own negligence proximately contributed to the injury or death complained of, and would therefore bar or defeat a recovery under either of the counts to which the pleas were addressed. The authorities in point are too numerous, and too familiar, to justify their citation.

Before dismissing the subject of the rulings on the pleadings, it may be said in passing that, if there was any error in the ruling sustaining the demurrer to any count of the complaint, it affirmatively appears that the ruling was without possible injury, for the reason that each of those counts finds a substantial duplicate in the counts as to which demurrers were overruled. Any evidence admissible under the one would be admissible under the other; and any evidence that would authorize a recovery under the one would authorize a

recovery under the other. Any evidence that would be a defense to the action stated in the one would likewise be a defense to the action stated in the other. Any plea available as defense to the one would be available as defense to the other; and vice versa. No more and no less would be required to prove a cause of action or a defense under the one than under the other. In other words, it clearly and affirmatively appears that each count in the declaration attempted to set up the same cause of action, each ascribing the cause of the injury to different acts of negligence or different acts of wantonness, many differing only slightly as to the details alleged; but the cause of injury, or act of negligence, or wrong set up, in each of the counts as to which the demurrers were sustained, finds a substantial duplicate in one of the counts as to which the demurrer was overruled, and in practically the same language. We feel perfectly safe in saying that no possible injury did or could result to the plaintiff from the rulings on the demurrer to the complaint.

We are of the opinion, however, that the court erred to the prejudice of the plaintiff in declining to allow her to prove that the motorman of the defendant suddenly stopped the car, threw open the door, and threw up his hands and exclaimed, "My God! I have killed a man." This, under the peculiar facts of this case, was a part of the res gestæ of the transaction being inquired about; that is, the wrongful death of plaintiff's intestate. Such acts, each and all, when taken together, and happening evidently within a few seconds after the car passed the body of the deceased, were admissible as circumstances for the consideration of the jury in determining whether or not the deceased was killed by being struck by defendant's car on the occasion in question, which, of course, was a material and neces-

sary inquiry; and, unless the evidence came from the defendant or its motorman, it was the best obtainable.

It is true, as argued by counsel for appellee, that plaintiff could have introduced this motorman as its own witness, and have proven by him whether or not his car struck or killed the intestate; but the plaintiff was not required to so introduce such witness if she could prove his acts and declarations, which were a part of the res gestæ, by other witnesses. If this fact is admissible as evidence, it is admissible as original and primary evidence tending to prove the issue, and not as secondary evidence or evidence to contradict the motorman. If the exclamation of the motorman at the time and under the circumstances mentioned was not admissible, he himself could not have testified that he did or did not make it. If he could have testified that he made or did not make the declaration or exclamation, then the passengers who heard or could have heard it were equally competent to so testify; and, of course, they could testify as to the acts and conduct of the motorman on the occasion, aside from the declaration or exclamation, as well as he could do so. So the failure of the plaintiff to introduce the motorman who made the declaration or exclamation as a witness does not affect the competency or relevancy of the evidence offered by the plaintiff to prove the facts. These incidents thus offered to be proven were a part of the res gestæ, and were therefore admissible in evidence.

We do not mean to say that such testimony tended to prove negligence on the part of the defendant or that of the motorman. Its tendency may have been the opposite—that is, to rebut negligence. What we do decide is that it was competent and admissible for the consideration of the jury, and that the jury might in-

fer therefrom that the deceased, or his body, was stricken by the car. The weight and sufficiency of such testimony was for the jury.

We confess that it is difficult, if not impossible, to define the principle of res gestæ. Like many other principles of the law, it is easier to say or define what it is not than what it is; hence negative definitions are probably the most serviceable and the most accurate in determining in a particular case whether a given fact or incident is a part of the res gestæ so as to render it admissible in evidence as such testimony. The subject has been so often discussed by this court, and at such length, that we could not hope to better define the term than has already been done by this court. In *Hawk's Case*, 72 Ala. 112, 117, 118, 47 Am. Rep. 403, it is said: "It is difficult, if not impossible, to accurately define the principle of res gestæ as it is often called. It is commonly said to have reference to such circumstances and declarations as are contemporaneous with the main fact under consideration, and so closely connected with it as to illustrate its character. —1 Greenl. Ev. § 108. What lapse of time is embraced in the word 'contemporaneous' is often a question of difficulty. Perfect coincidence of time between the declaration and the main fact is not, of course, required. It is enough that the two are substantially contemporaneous. They need not be literally so. The declaration must, however, be so proximate in point of time as to grow out of, elucidate, and explain the character and quality of the main fact, and must be so closely connected with it as to virtually constitute but one entire transaction, and to receive support and credit from the principal act sought to be thus elucidated and explained. The evidence offered must not have the ear-marks of a device, or afterthought, nor be merely narrative

of a transaction which is really and substantially past."
The same language almost has been used in dozens of
cases before and since *Hawk's Case.* The decisions and
the text-books on the subject were reviewed and quoted
in *Pearson's Case,* 97 Ala. 211, 12 South. 176, and in
the recent case of *Alabama City, G. & A. R. Co. v. Heald,*
178 Ala. 636, 59 South. 461. In *Hammond's Case,* 93
Ala. 185, 9 South. 577, it is said: "To determine when
declarations relating to a transaction form part of the
res gestæ often requires nice discrimination. As a gen-
eral rule, approximating definiteness as nearly as prac-
ticable, it may be said, that when the declarations are
the natural outgrowth of the transaction, spontaneous-
ly expressed, are so nearly coincident in point of time
with the main fact as to serve to illustrate and explain
it, they are admissible on the principle that the decla-
rations and the main fact constitute one transaction."
In *Hawk's Case* and *Hammond's Case* and *Pearson's
case* the particular declarations in question were held
not to be admissible; but from what is said in each of
those cases the acts and declaration of the motorman in
this case would have been held admissible. They were
held not to be admissible in each of those cases, because
not spontaneous but made in answer to questions, and
because narrative of past transactions, and not the ac-
tual product of the main transaction, as was the excla-
mation of the motorman in this case, "My God! I have
killed a man," made before he had time to reflect, as an
exclamation of surprise and shock, and not in answer
to any question. His acts, deeds, and words all show-
ed that they were natural and spontaneous, and were
not concocted nor made after deliberation or reflection.
In the ebullition of his excitement, human nature and
the emotions spoke, as well as the individual motor-
man. In the language of Chief Justice Bleckley in

*Sheppard's Case,* 85 Ga. 751, 12 S. E. 18 (quoted by
Justice Sayre, in *Heald's Case,* above referred to), the
exclamation of the motorman, "My God! I have killed
a man," was the "utterance of human nature, of the
genus homo, rather than of the individual."

We are also of the opinion that the trial court erred
in declining to allow plaintiff to prove other and dif-
ferent specific acts of the motorman tending to show
the incompetence of the motorman (Duncan). The
competency vel non of this servant was by the plead-
ings made an issue in the case, and such evidence was
therefore competent and relevant, as to this one issue.
It was not relevant, of course, to show negligence on
the part of the motorman on this occasion, but it was
competent and admissible to show incompetency gen-
erally, which was made an issue; and the plaintiff, ten-
dering such evidence, properly requested the court to
so limit the evidence to that one issue, stating that it
was not offered to show negligence in any specific act
alleged, but only to show incompetency generally. For
the guidance of the court on another trial, if such
should be had, we here restate the rule as to the ad-
missibility of such evidence, as it was stated by this
court in *First National Bank, etc., v. Chandler,* 144
Ala. 286, 307, 308, 39 South. 822, 113 Am. St. Rep. 39,
and which, as it is stated and shown in that opinion,
seems to be the general rule on the subject: "Liability
on the part of an employer for an injury caused by the
incompetency of a fellow servant depends upon its
being established by affirmative proof that such incom-
petency was actually known by the master, or that, if
he had exercised due and proper diligence, he would
have learned that which would charge him in the law
with such knowledge. * * * The presumption is
that the master has exercised proper care in the selec-

tion of the servant. It is incumbent on the party charging negligence in this respect to show it by proper evidence. This may be done by showing specific acts of incompetency and bringing them home to the knowledge of the master or company, or by showing them to be of such nature, character, and frequency that the master in the exercise of due care, must have had them brought to his notice. But such specific acts of alleged incompetency cannot be shown to prove that the servant was negligent in doing or omitting to do the act complained of. So it is proper, when repeated acts of carelessness and incompetency of a certain character are shown on the part of the servant, to leave it to the jury whether they did come to the knowledge of the master, if he had exercised ordinary care. * * * It is understood, of course, that the incompetency of the servant in all cases, in order to charge the master, was the proximate cause of the injury. The mere fact that the servant was incompetent and the master had knowledge thereof is of no importance, unless therein is found the cause of the injury, or a cause contributory thereto, without which it might have been avoided or not have happened."—Bailey on Master's Liability for Injuries to Servants, 47, 54. We do not mean to say that this rejected evidence would have fully met all the requirements as to sufficiency; but, the trial court having declined to allow any of it for this purpose, we cannot know that the plaintiff offered all she had or would have offered, but for these rulings adverse to her.

It follows from what we have said that the trial court erred in excluding all the evidence and directing a verdict for the defendant.

It is earnestly insisted for appellee that, whatever errors may have been committed by the trial court, it affirmatively appears that each and all were without

possible injury, for the reason that the plaintiff did not make out a case sufficiently to go to the jury. We cannot assent to this argument of appellee's counsel. It appears that the trial court excluded testimony offered by the plaintiff, which was both relevant and competent, and declined to allow her to introduce proof of facts which were relevant and admissible under the issues raised by the pleadings; hence we cannot say that, if there had been no such errors committed, the plaintiff would not have made out her case sufficiently to go to the jury. We do not mean to intimate that the plaintiff did make out her case, or that if the court had allowed all the evidence that was offered by her, and excluded all that of the defendant's to which she objected, the jury would have found, or ought to have found, a verdict for or against the plaintiff; but we decide only. that the court committed reversible error as to the matters which we have pointed out, and that, for the reasons we have mentioned, the doctrine of error without injury does not apply. This opinion has already been extended too far, and it is sufficient to say that we find no other reversible errors insisted upon.

The writer for himself alone desires to again register his disapproval of the practice of trial courts' excluding all the evidence, relevant and irrelevant, on the motion of a defendant, and then directing the jury that, "if they believe the evidence, they will find for the defendant." In the opinion of the writer this is a practice that ought not to be tolerated. It is illogical, if not absurd. Not only this, it is in plain violation of the statutes which have been in force in this state for more than half a century. It permits the court and the defendant to more than nonsuit the plaintiff against his wishes and protest, and makes that nonsuit res judicata in spite of the statute and of the decisions of

this court to the contrary. No criticism of this particular trial is meant. It is a well-known and growing practice in this state. The writer does not believe, however, that custom ought ever to make that law, which is plainly an evasion or violation of express statutes; and to his mind there is no kind of doubt that such is this practice complained of.

For the errors indicated, the judgment must be reversed, and a new trial ordered.

Reversed and remanded. All the Justices concur.