LEIGH M. CLARK, Retired Circuit Judge.
A jury found defendant (appellant) guilty of rape in the first degree on a trial on an indictment that charged that he, “a male, did engage in sexual intercourse with Theresa Dianne Bland, a female, by forcible compulsion.” The court fixed his punishment at imprisonment for twenty-five years and sentenced him accordingly.
Code of Alabama 1975, § 13A-6-61(a) provides:
“A male commits the crime of rape in the first degree if;
“(1) He engages in sexual intercourse with a female by forcible compulsion.

According to § 13A-6-61(b), rape in the first degree is a Class A felony, for which the punishment prescribed is “for life or not more than 99 years or less than 10 years.” § 13A-5-6(a)(l).
According to the undisputed evidence, the incident that gave rise to the indictment occurred in Gadsden City Jail on the evening of August 28, 1980, and consisted of sexual intercourse between defendant, a trusty in the jail, and the victim, an inmate 18 years of age, who had been confined in the early evening of August 28. According to the evidence for the State, including the testimony of the alleged victim, the intercourse was procured by the defendant by forcible compulsion. The defendant testified that it was consensual. The victim, a resident of Petersburg, West Virginia, a *466 married woman who had been separated from her husband two years or more, had been living with a man at a motel in Gadsden, and on the late afternoon or early evening of August 28 she had become intoxicated and boisterous, had a fight with her boyfriend, and was brought to the jail on a charge of “public intoxication.” She was at first put in a cell with “two other girls” and soon transferred to an adjoining cell in which the incident occurred.
About the time the alleged victim was transferred from one cell to another, she asked and was given permission to make a phone call, which took her away from the cells. Upon her inability to complete the call, a trusty, “a black guy,” was handed the key and directed to take her back to her cell. She testified:
“Q. All right. And did he take you back to your cell?
“A. Yeah. And—
“Q. What did he do at that time?
“A. He unlocked the cell door and let me in and shut it, but he did not lock it. “Q. Did you see at that time that he did not lock it?
“A. No, I didn’t know. At that time I thought he had locked it, but I found out—

“Q. Then what happened?
“A. Well, I went over and lay down on the bunk and a couple minutes later I looked up and the first black guy was standing at the door and the white guy [the defendant] was standing at the door and the white guy was in there coming towards me.”
The witness then proceeded to tell, in language that need not be repeated, what defendant said and did, which constitutes, we think, substantial, but not conclusive, evidence of defendant’s guilt of the crime charged. There was some corroboration of the victim’s testimony by the testimony of the two “girls” in the adjoining cell, to whom some of the noise and conversation in the victim’s cell was audible.
Although the evidence above narrated is sufficient to present a jury issue as to the guilt of the defendant of rape in the first degree, the evidence as to what occurred that night between defendant and the victim did not cease with that which has been summarized. The victim’s testimony continued, and she said that about forty minutes after what had previously occurred, the defendant “came back in and had intercourse with me again” and promptly thereafter there was a third act of intercourse between the two at which, or during which, the trusty who had closed the door of her cell and another trusty joined the defendant. Her testimony continued:
“Q. Who were the other people who were present?
“A. Two black guys.
“Q. All right. And this is all at the same occasion, same time?
“A. Uh-huh.

“Q. What was the first black man doing at that time?
“MR. DOWNS: We object to what anybody else was doing.
“MR. WILSON: Judge, this is part of the res gestae and this Defendant was there physically present.
“THE COURT: At that time. I’ll allow this testimony in.
“MR. DOWNS: We except.”
During further brief interrogation, the witness testified that thereafter three penetrations of her occurred, one by the defendant as he had done at least twice before, another by one of the other persons contrary to the order of nature, and the third by conduct, differing in locus from the deviation of the second, also contrary to the order of nature.
The two women in the adjoining cell testified also that a short time prior to the defendant’s admission to the jail, the defendant and the other two trusties, came to the cell of the two women with some Vodka and asked to “swap out” the Vodka for sex. The trusties left the cell after being ordered to do so by the two inmates.
*467 About 6:00 A.M. the next day, the victim was admitted to the emergency room of the Baptist Memorial Hospital, where she was examined by Dr. Allison A. Louber, whose testimony, on the call of the State, shows a thorough examination and detailed findings that are substantially conclusive as to then recent sexual intercourse, that is consistent with, but not conclusive as to, the alleged rape by the defendant and deviate sexual intercourse by the other two trusties.
Two of appellant’s insistences on a reversal raise the question whether the State, by its repeated references to the race or color of the other two trusties, in contrast with that of the white defendant and the white victim, appealed to racial prejudice of the white jury that tried the case, to the injury of the defendant.
Long before the words and deeds of the last few decades that have tended to arouse animosity between races, the appellate courts of this state made it crystal clear that appeals to race prejudice would not be tolerated in the courts of Alabama. In most of the cases reported, the appeals to racial prejudice were directed toward a black defendant in a criminal case. However, the poisoned arrow has also been detected and condemned when directed toward a black witness. In Tannehill v. State, 159 Ala. 51, 52, 48 So. 662 (1909), in which the defendant was black and was convicted of murder in the second degree, the remarks held intolerable were:
“The only defense to these confessions of the defendant, with the corroborating facts shown by Mr. McBride and Mr. Martin, is the alibi set up by a lot of negro witnesses. Why, gentlemen, if you acquit this man on such an alibi as this, you can never expect to convict another negro of crime in this country. You know the negro race — how they stick up to each other when accused of crime, and that they will always get up an alibi, prove it by perjured testimony of their own color, and get their accused companion clear if they can.”
In James v. State, 170 Ala. 72, 54 So. 494 (1911), the Supreme Court, quoting from Tannehill, supra, reversed a conviction of “malicious injury to animals” for the single reason that the prosecuting attorney had argued to the jury, that “if the negro was taken out of court there would not be much left.”
In Simmons v. State, 14 Ala.App. 103, 71 So. 979 (1916), there was a reversal of appellant’s conviction of violating the prohibition law on the single ground that the trial court had not sustained defendant’s objection to the statement of the solicitor, “You must deal with a negro in the light of the fact he is a negro, and applying your experience and common sense.” The Court of Appeals said in a one-paragraph opinion:
“... The fact that the defendant was of the negro race did not deprive him of the equal protection of the law, or necessarily discredit his testimony, and should not have been used in argument as a means of arraying the prejudices of the jury against him.”
There has been no variance in subsequent cases from the clearly defined principle stated above. This is not to say that one, whether a party in litigation, a witness or any other person, could not in the trial of a case ever be referred to by the judge, a party, counsel, a witness or any other person, for the purpose of identification, by language generally recognized as inoffensive, even though it constitutes a particularization of his race or color. The distinction between the injustice of condoning the one and the justice of permitting the other is found in Peterson v. State, 227 Ala. 361, 367, 150 So. 156 (1933), as follows:
“The question of prime importance was one of identification of the defendant. The witness Nell Williams, present during the entire period, pointed her accusing finger at the defendant, and we see no objection to permitting her to say, in answer to the inquiry as to whether or not she had any doubt in her mind as to the matter of identification, T know that he is the negro.’ It was the sister of the witness Nell Williams for whose murder the defendant was being tried, and she points out the defendant as the guilty *468 party. Effort was made to show she was mistaken in her identification. There was therefore nothing improper in permitting the state on redirect examination to show that the witness had looked at many witnesses. Cotton v. State, 87 Ala. 75, 6 So. 396. The commission of the crime by a negro man was not a matter of dispute, and the issue was, as previously stated, one of identification.”
In recognition of the principle that reference to the race or color of another in a judicial proceeding is not necessarily impermissible and that it is appropriate when material to an issue of identification, appel-lee states in its brief: “The record appears clear that the designations white and black were used for distinguishing between the defendant and his accomplices.” We have little doubt that as to several such designations the conclusion of appellee is correct. Furthermore, we are not persuaded that counsel for the State intentionally appealed to racial prejudice by referring to the two other men involved as “black men” on numerous occasions. Nevertheless, many of such references could and should have been avoided and require further consideration.
There would have been much fewer occasions for any reference to the other two persons as “black” if the court had not permitted the State to introduce evidence as to what occurred in the cell in which the alleged victim was confined that shed no light on the issue whether the previous act of intercourse between her and the defendant was by forcible compulsion. The overruling of defendant’s objection opened a floodgate of evidence of at least one other, and perhaps two other, acts of intercourse between defendant and the alleged victim, of evidence of deviate sexual intercourse by forcible compulsion by each of the other two trusties, with accompanying evidence to the effect that the defendant aided or abetted the two trusties in the commission of such crimes.
The court was in error in overruling defendant’s objection to the question to the victim as shown by the portion of the transcript quoted above, in which it is to be noted that counsel for the State interposed between the objection and the ruling of the court, “Judge, this is part of the res gestae and this Defendant was there physically present.” The interposed statement came near facially being good reason for overruling the objection, but not so upon careful consideration of all of the pertinent facts.
The often cited principle on the subject as stated by Judge McElroy is as follows:
“Evidence of the accused’s commission of another crime is admissible if such other crime is inseparably connected with or is a part of the res gestae of the now-charged crime. This rule is often expressed in terms of the other crime and the now-charged crime being parts of one continuous transaction or one continuous criminal occurrence.” Gamble, McElroy’s Alabama Evidence, § 69.01(3) (1977)
In none of the cases citing, and in none of the cases cited by, said § 69.01(3), do we find any inconsistency in what we now hold. However, among such cases, is Taylor v. State, Ala.Cr.App., 352 So.2d 1154 (1977), in which there is considerable resemblance in some of the facts to the facts in the instant case. In Taylor, defendant was convicted of rape. The evidence showed that he raped the alleged victim three times within a few hours. The evidence, however, to which the objection was made was not the testimony of the victim, but was a part of a written statement of defendant pertaining to his firing a gun at or about the time and place of the third rape. Also, in Taylor, there was no evidence or contention that defendant was aiding or abetting another, or that some other person was aiding and abetting him, in committing the crime. In Taylor, the defendant did not testify. In the instant case, as previously noted, the defendant testified and narrowed the issue to whether there was forcible compulsion as to the admitted first act of intercourse. By the State’s selection of it as the first incident upon which to base its charge of rape in the first degree, it elected to treat it as the case to be tried.
*469 The transcript shows that before any evidence was presented and while counsel for the State was making his opening statement to the jury as to what he expected the evidence to show, the following occurred:
“MR. WILSON: Now, we also intend to prove to you that at a later time he got up and left and testimony will tell you that at that time there was a black man waiting his turn, after the first man left. After this Defendant left there was a black man—
“MR. DOWNS: Your Honor, I object to any further statement—
“THE COURT: Sustain the objection to any other offenses that were committed by any other persons.”
Whether testimony of the victim as to the combined trespass on her person of the defendant and the two other trusties comes within the res gestae rule or was so inseparably connected with the preceding conduct of defendant must be examined with particular reference to the place, the time and the nature of the crime or crimes involved. The place was the same as to both, but there was a difference of forty minutes between consummation of the first act and the commencement of the concerted conduct relative to the victim by the defendant and the two other trusties. We fail to see that the conduct that the victim said occurred thereafter can logically be said to have been part of “the thing done”[1] theretofore. In deciding whether a statement made by the alleged victim of a rape by the defendant was admissible in evidence on the basis that it was a part of the res gestae, it was held in Harvey v. State, 41 Ala.App. 526, 138 So.2d 270, 271 (1962):
“The Attorney General, while admitting the impropriety of the use of the conclu-sionary expression ‘You raped me,’ would justify its use here as an instance of early complaint which partook of the res ges-tae, and, therefore, need not have been confined to a bare statement of making complaint.
“In view of the considerable distance from the site of the act of sexual intercourse to the sister’s house, we do not consider that the accusation was contemporaneous with the act itself. See the discussion as to res gestae by Mayfield, J., in Bessierre v. Alabama City G. & A.R.R. Co., 179 Ala. 317, 60 So. 82.”
In the same case, it was held that the evidence as to a fight between the defendant and another man, shortly after the quoted statement by the prosecutrix, was not admissible. As to such evidence, it is stated:
“... The refusal of the court to sustain the objection to the question and to exclude this evidence was error which was prejudicial to Harvey, since it violated the rule against admitting evidence of other offenses or of matter from which complicity in another crime might be inferred. Mason v. State, 259 Ala. 438, 66 So.2d 557, 42 A.L.R.2d 847.”
In our opinion, the admission of evidence in the testimony of the victim as to what occurred while she, the defendant and the other two trusties were in the cell together, cannot be justified on the principle that it was a part of the res gestae of the crime charged.
As to whether the conduct of the three contemporaneously directed against the victim was “inseparably connected with” the affair between defendant and the victim occurring forty minutes before, and after defendant had been out of the cell for that forty minutes, our answer is in the negative. We find no difficulty in separating the uncomplicated crime the witness said the defendant alone committed from the imbroglio as to which a major part of the entire evidence was related.
During the cross-examination of the defendant as a witness for himself, counsel for the State repeatedly brought from him a denial of any substantial knowledge of what the other two trusties did to the victim after the defendant left her cell. As to a large part of such cross-examination, there was no objection by defendant. *470 There is room for a reasonable contention that defendant did not preserve on the trial the reviewability of the admission in evidence of part of the testimony as to what occurred during the three on one episode, but we think that there was sufficient objection, as previously indicated and as shown hereafter, for us to determine whether the court committed reversible error in permitting the introduction of such evidence and in its related rulings.
During the cross-examination of the defendant, the following occurred:
“MR. WILSON: I’m asking cross-examination questions, if it please the Court.
“THE DEFENDANT: What is your question?
“MR. WILSON: I ask you, sir, about the black man entering the cell-—
“MR. DOWNS: Your Honor, we object to that question.
“THE COURT: Overruled.
“MR. DOWNS: We except.
“MR. WILSON: It’s your testimony to this jury that as you were leaving her cell with these kind and gentle feelings, that you turned her over to a black man also for the act of sexual intercourse; is that correct?
“MR. DOWNS: We object to the term ‘turned over.’
“THE COURT: Overruled.
“MR. DOWNS: We except.”
On further cross-examination, the following occurred:
“Q. And the fact that the evidence and the doctor has pointed out to this jury that there was a rectal tear of about a quarter of an inch—
“MR. STEWART: Your Honor, we object to the testimony about that. We are talking about an alleged rape here.
“THE COURT: Let him finish his question and make your objection and I’ll rule.
“Q. What I’m asking you, sir, is if you know at any time of anyone having anal intercourse with this woman?
“MR. STEWART: Your Honor, we object to this. We are talking about an alleged rape.
“THE COURT: Overruled.
“MR. DOWNS: Your Honor, he testified he was not in the cell at the time the two other black men were there.
“THE COURT: Gentlemen, I don’t want any more speeches. Let him answer the question.
“MR. DOWNS: That’s the basis of our objection, Your Honor.
“Q. I’ll ask you, sir, if you’re aware of that?
“A. Could you repeat that, please?
“Q. The anal intercourse.
“A. I have no idea. I know nothing about that.”
During the argument of counsel to the jury, counsel for the State continued, as he did during the presentation of the evidence, to impress upon the jury the incident or incidents that occurred in the cell while, according to the victim, the three trusties were in the cell with the victim. Before the argument commenced, counsel for defendant attempted to obtain a ruling that would have precluded such argument, as shown by the following colloquy in camera:
“MR. DOWNS: Your Honor, at this time we would like to make it known to the Court we’d like the Court to instruct the prosecution that during their closing statement that they not make any reference to the sodomy or other acts that this Defendant is not charged with.
“THE COURT: Only the things that he is charged with, that’s correct.
“MR. DOWNS: Or any of the acts of any of the other Defendants.
“MR. WILSON: That’s all in evidence.
“THE COURT: He can argue any inferences from the evidence but not that your Defendant is not charged with anything except rape.”
Thereupon, in the first argument to the jury of counsel for the State, the following occurred:
“MR. MARTIN: They had been thinking about it. And that they did, in fact, carry out their plan. Now, why else would Mr. Davenport have been hiding in *471 there m her cell? Why else would Mr. Robinson when he come back pretended—
“MR. DOWNS: I object to any testimony about anybody that’s not on trial in this case. There is no conspiracy charged. We object to any argument about that.
“THE COURT: Overruled.
“MR. DOWNS: We except.
“MR. MARTIN: Why else would Mr. Robinson when he—
“MR. DOWNS: We object to Mr. Robinson—
“THE COURT: He may argue any inference from the evidence.
“MR. DOWNS: Mr. Robinson is not charged in this case before this Court.
“THE COURT: He’s not saying he was charged either, Mr. Downs. Overrule your objection.
“MR. DOWNS: We except, Your Honor.

“MR. MARTIN: Well, they knew they had all the time in the world. Knew they had all the time in the world. Weren’t worried about that jailer coming around and checking—
“MR. DOWNS: We renew our objection to talking about they.
“MR. MARTIN: Your Honor, this is all in evidence from the witness stand.
“THE COURT: Overrule your objection. “MR. DOWNS: We except.”
During the final argument of counsel for the State, the following occurred:
“MR. WILSON: There was a tear in the rectum area. She didn’t get that in any altercation with her boyfriend.
“MR. STEWART: Object to that. There is no testimony at all that this Defendant had anything to do with that.
“MR. WILSON: That was all in the same incident and that’s the evidence before the Court.
“MR. DOWNS: We object again.
“THE COURT: I shall instruct the jury.
“MR. DOWNS: We object to the jury hearing the argument.
“THE COURT: You may proceed.

“MR. WILSON: And then the Defendant says to you, ‘No. They are lying about that. These two girls and Theresa are lying about that.’ Then I asked him about the second act. I said, ‘Now, in the second act — ’ He said, ‘What second act?’
“MR. DOWNS: Your Honor, we object. We made a motion on this particular issue already.
“THE COURT: Overruled.
“MR. DOWNS: We renew our objection. We except.”
Although we are not absolutely satisfied that defendant did all that he could and should to have prevented the evidence and argument of counsel as to what occurred in the victim’s cell when, as she testified, the defendant and the two other trusties as a team were ravishing her, it had no relevance whatever to whether defendant had been guilty of rape in his admitted act of intercourse. We have no doubt that such evidence was not germane to the issue in the case, that it should not have been admitted in evidence, and that the trial court was in error in its rulings on the subject. By such evidence and argument of counsel, the case was transformed from one presenting a very simple issue of whether defendant’s intercourse with the victim was by forcible compulsion to one in which it was difficult for a jury to arrive at a verdict on the issue free from prejudice, passion, and the contaminating influence of the subsequent events. Defendant was an easy prey for such influence because of his admitted immorality accentuated by his breach of trust as a trusty. Even so, as greatly reprehensible as his admitted conduct was, he was entitled to a verdict of not guilty of the crime charged in the indictment, if there was no forcible compulsion by him.
Although we find no error in the court’s sustaining the State’s objection to statements in writing by the other two trusties as to what occurred, who probably for obvious reason did not testify on the trial, such statements are in the transcript before us and tend to emphasize the extent of the injury to the defendant in the admis *472 sion of the evidence and in the argument of counsel relative to the conduct of the other two trusties. Each statement was to the effect that the one making the statement had consensual sexual relation with the victim on the night of the alleged crime, separate and apart from each other, and separate and apart from intercourse between defendant and the victim.
The only other issue presented by appellant is as to the action of one of the jurors in obtaining a definition of rape from a dictionary, while the jury was not sequestered. As such incident is not likely to occur on another trial and as a determination thereof would be unnecessary in view of the necessity for a reversal for the reasons already stated, we will not discuss it further at this time, other than to say that it is understandable why, in this particular case, the juror would feel the need for a dictionary to inform him as to the meaning of rape.
For the errors indicated, the judgment of the trial court should be reversed and the cause remanded.
The foregoing opinion was prepared by Retired Circuit Judge LEIGH M. CLARK, serving as a judge of this Court under the provisions of § 6.10 of the Judicial Article (Constitutional Amendment No. 328); his opinion is hereby adopted as that of the Court.
REVERSED AND REMANDED.
All the Judges concur.

. Brown v. State, 33 Ala.App. 97, 31 So.2d 670, 675 (1946).