(100 So. 625)

## STATE v. MASSEY. (6 Div. 554.)

(Court of Appeals of Alabama. June 10, 1924.)

**1. Bail** ☞43—Granting automobilist indicted for murder in first degree bail held not error.

A ruling allowing bail to a drunken automobilist indicted for murder in the first degree under Code 1907, § 7084, div. 4, for running his automobile into a train of cars, and killing an occupant, held not error, in view of Const. 1901, Bill of Rights, § 16.

**2. Criminal law** ☞55—Drunkenness may render intoxicated person incapable of forming specific intent, and as affecting mental state is jury question.

Voluntary drunkenness does not excuse client, but its excessiveness may produce such a mental condition as to render intoxicated person incapable of forming a specific intent, and, when intent is an essence of the crime, drunkenness as affecting mental state is a question for jury.

**3. Homicide** ☞22(1)—Conditions under which automobilist may be guilty of murder in first degree for death in railroad crossing collision.

Where driver consciously drives an automobile occupied by others at an excessive rate of speed into a railroad train moving over a street crossing, knowing that automobile will strike the train, and death will probably result to one or more of occupants, though without a preconceived purpose to deprive a particular person of life, but with a reckless disregard of human life, and death results from the act, driver may be guilty of murder in first degree, under Code 1907, § 7084, div. 4.

**4. Homicide** ☞62—Automobilist, accidently driving into train while in commission of unlawful act, guilty of manslaughter for death of occupant.

Where automobilist, while in commission of an unlawful act, such as exceeding speed limit, accidently drives into a train crossing and kills an occupant, the offense is manslaughter.

Appeal from Circuit Court, Jefferson County; John Denson, Judge.

Proceeding by petition for habeas corpus to fix bail for Chester Massey. From a judgment admitting the defendant to bail, the State appeals. Affirmed.

Harwell G. Davis, Atty. Gen., Jim Davis, Sol., and Willard Drake, Asst. Sol., both of Birmingham, for the State.

One may be guilty of murder in the first degree who perpetrates an act greatly dangerous to the lives of others, and evidencing

a depraved mind, resulting in death, although he had no preconceived purpose to kill the party slain. Code 1907, § 7084; Mitchell v. State, 60 Ala. 26; Johnson v. State, 203 Ala. 30, 81 South. 820. The conduct of defendant being sufficient to charge him with universal malice, he is not entitled to bail. Code 1907, § 6337; 4 Blackstone's Comm. 200; McCormack's Case, 102 Ala. 156, 15 South. 438; Patterson's Case, 156 Ala. 62, 47 South. 52; State v. Irvine, 126 La. 434, 52 South. 567; Comm. v. Hawkins, 157 Mass. 551, 32 N. E. 862; Comm. v. Drum, 58 Pa. 9; Darry v. People, 10 N. Y. 140; Foster's Cr. Law, 356; Tarvers v. State, 90 Tenn. 485, 16 S. W. 1041; State v. Stentz, 33 Wash. 444, 74 Pac. 590; State v. Campbell, 82 Conn. 671, 74 Atl. 927, 135 Am. St. Rep. 293, 18 Ann. Cas. 236; Schultz v. State, 89 Neb. 34, 130 N. W. 972, 33 L. R. A. (N. S.) 403, Ann. Cas. 1912C, 495.

Gibson & Davis, of Birmingham, for appellee.

No brief reached the Reporter.

FOSTER, J. [1] The appeal in this case is by the state from an order of court allowing the petitioner bail; he being restrained by virtue of an indictment charging murder in the first degree.

On March 3, 1924, at about 12:45 a. m. the petitioner, while driving a five-passenger automobile westward on avenue F, in the city of Birmingham, collided with a Louisville & Nashville Railroad freight train where the railroad tracks of said company cross avenue F at Seventh street. At the time of the collision there were riding in the car with petitioner Mrs. Bowden (the deceased) and three other persons. The automobile collided with a car estimated to be about the twentieth car back of the engine pulling the train, and at the time of the collision was going at such a rate of speed estimated at 40 miles an hour, that the automobile was almost completely demolished, and the car in the train that was struck by the automobile was badly damaged. All of the occupants of the car were rendered unconscious by the collision, and Mrs. Bowden lived but a short time afterward.

Massey, the petitioner, invited the other occupants of the car to go with him to his home over Red Mountain, in Shades Valley, for the purpose of securing his time book. After the time book was secured, the party located about a half gallon fruit jar almost full of corn whisky, and partook freely thereof. There was testimony that Massey was in such condition from the effects of the liquor that he was importuned by two of the occupants to relinquish the steering wheel to Mr. Lockett, but that he replied, "I can drive better when I am drunk than when I am sober," and continued driving, going down Red Mountain into Birmingham,

down Fifteenth street to avenue F, and west on avenue F to the point of collision. There was testimony that Lockett, at a point about two blocks from the point of collision, observed that the crossing was occupied by a passing freight train, and called to Massey, "There is a man on the rail." Massey's reply was, "I can make it." All of the witnesses who testified as to the rate of speed of the automobile just before and at the time of the collision gave it in their judgment at 40 miles an hour, except Massey, who claimed he was not running over 22 or 23 miles an hour. Massey admitted drinking some liquor which he said had a "kick" in it, denied all knowledge that the train was on the crossing, claimed he did not see it, or the red light, denied that Lockett told him that there was a man on the rail, or that any one made any suggestion to him that he was too drunk to drive the automobile. Avenue F is a much-used thoroughfare, a great deal of traffic passes over it both day and night. There are five or six Louisville & Nashville Railroad tracks that cross avenue F at the point of the collision, and much traffic is moved by the railroad over this crossing.

The third count in the indictment was laid under the fourth division of first degree murder as appears in section 7084 of the Code of 1907, which is as follows:

"Every homicide * * * perpetrated by any act greatly dangerous to the lives of others, and evidencing a depraved mind regardless of human life, although without any preconceived purpose to deprive any particular person of life, is murder in the first degree."

In the case of Mitchell v. State, 60 Ala. 26, Judge Stone, speaking for the court, says:

"It will be observed, however, that this fourth class omits all mention of the words, malice aforethought, formed design, willful, deliberate, malicious, premeditated, unlawfully and maliciously, some of which are found in all the common-law definitions of murder, save that from universal malice."

And:

"We think the Legislature, in this clause, intended to raise to the high grade of murder in the first degree those homicides which are the result of what is called 'universal malice.' By universal malice, we do not mean a malicious purpose to take the life of all persons. It is that depravity of the human heart, which determines to take life upon slight or insufficient provocation, without knowing or caring who may be the victim. The supreme depravity shown in this so-called universal malice, is considered as the equivalent of the strong adjectives, willful, deliberate, malicious, and premeditated, which characterize the first class of murder in the first degree."

The above pronouncement was approved in Johnson v. State, 203 Ala. 30, 81 South. 820.

"If the act done was an unlawful act, and the doing of it was directly perilous to human life,

and so known to the wrongdoer, that then there is implied such a high degree of conscious and willful recklessness as to amount to that malignity of heart constituting malice. The result may not have been intended, yet the deliberate and conscious doing of an act the probable consequence of which was death, amounts to murder at common law." Tarvers v. State, 90 Tenn. 485, 16 S. W. 1041.

It is clear that the fourth division of murder in the first degree, supra, does embrace those cases where an intent to take life exists, which is not directed to any particular individual, but is general and indiscriminate. It was not intended to be confined to those cases, but was designed to include those cases also in which death is produced by acts putting the lives of many in jeopardy, under circumstances evincing great depravity and utter recklessness in regard to human life. One may shoot into a crowd merely for the purpose of producing alarm and not having the intent to kill any particular person, although at the imminent hazard, as he knows, of killing some one. One may drive a high-powered automobile along a crowded street of a large city at a high rate of speed into a crowd of children playing in the street, killing one of them, but without the intent to kill any particular person, knowing that such reckless act will probably result in death. One may ride an unruly horse in a run into a crowd of people without the intent to kill any particular person, but knowing that the horse is likely to run over and trample to death some one or more persons. Again he may open the drawbridge of a railroad company with the intent to kill the passengers or for the sole purpose of destroying the property of the railroad company.

The fourth division, supra, was intended to provide for all these and similar cases without regard to the particular intent. The phrases "greatly dangerous to the lives of others" and "depraved mind regardless of human life" have an apt and intelligible meaning, when used in regard to such cases, and it is clear that such acts producing death fall within the quoted subdivision, and may constitute murder in the first degree.

[2] There was testimony that the petitioner was drunk. Voluntary drunkenness does not excuse crime, yet its excessiveness may produce such a mental condition as to render the intoxicated person incapable of forming a specific intent, and, when the intent is of the essence of the crime, drunkenness as affecting the mental state of the accused becomes a proper question for the jury in determining the question of intent. Fonville v. State, 91 Ala. 39, 8 South. 688.

The weight of authority sustains the doctrine that evidence of the condition of the accused, though caused by voluntary drunkenness, may be considered by the jury in deciding the question of intent.

"Partial intoxication will not avail to disprove the specific intent; it must be of such character and extent as to render the accused incapable of consciousness that he is committing a crime; incapable of discriminating between right and wrong—stupefaction of the reasoning faculty." Chatham v. State, 92 Ala. 47, 9 South. 607.

Partial intoxication as shown by the evidence in this case will not excuse crime.

Judge Stone in Mitchell v. State, 60 Ala. 26, defines "universal malice" as that "depravity of the human heart, which *determines* [italics ours] to take life upon slight or insufficient provocation, without knowing or caring who may be the victim."

One of the definitions of determine is "to conclude or decide as the result of reasoning." Webster's New International Dictionary. Some action of the mind therefore is necessary to "determine" upon a certain course. The reasoning faculty must be brought into play. The same doctrine which permits the jury to consider evidence of voluntary drunkenness in determining the question of intent is applicable in deciding whether or not there was an operation of the accused's mind, a result of the depravity of heart, which determined to take life without sufficient provocation, without knowing or caring who might be the victim, or whether he was knowingly and consciously guilty of doing a grossly negligent act dangerous to the lives of others, "evidencing a depraved mind regardless of human life, although without any preconceived purpose to deprive any particular person of life."

[3, 4] If one knowingly and consciously drives a high-powered automobile occupied by four or five persons at an excessive rate of speed into a railroad train moving over a street crossing, knowing that the train is moving over the crossing, and that the automobile will strike the train, and that death will probably result to one or more occupants of the car, although without any preconceived purpose to deprive any particular person of life, but with a reckless disregard of human life, and death results from such act, the driver of the automobile may be guilty of murder in the first degree under the fourth division of first degree murder, supra. He may be as careless and reckless about his own life as he is as to the lives of others and may still be guilty. If he did not know the train was on the crossing, and did not know that he was driving the automobile into the train, and if he did not determine to drive it into the train regardless of consequences, but if the act of so driving it was purely accidental, but while in the commission of an unlawful act, such as driving along a public highway at a reckless rate of speed, or exceeding the speed limit, the of-

fense would be manslaughter. All the facts and circumstances are properly submitted to the jury for their determination under instructions from the court as to the law.

The question here presented is whether or not the petitioner is entitled to bail. Section 16 of the Bill of Rights, Constitution of 1901, reads:

"That all persons shall, before conviction, be bailable by sufficient sureties, except for capital offenses, when the proof is evident or the presumption great; and that excessive bail shall not in any case be required."

Weight must be given to the finding of facts by the primary court who sees and hears the witnesses. Unless error is apparent, his ruling will not be disturbed. It is our opinion that the ruling of the court allowing the petitioner bail is free from error. Ex parte Dykes, 83 Ala. 114, 3 South. 306; Ex parte Hammock, 78 Ala. 414; Ex parte Bryant, 36 Ala. 270.

Affirmed.