17 So.2d 283

## MADDOX v. STATE.

### 6 Div. 18.

Court of Appeals of Alabama.
March 21, 1944.

No attorney marked for appellant.

Wm. N. McQueen, Acting Atty. Gen., and Bernard F. Sykes, Asst. Atty. Gen., for the State.

BRICKEN, Presiding Judge.

The appellant was put to trial upon an indictment which charged him with the offense of assault with intent to murder. Under the Statute (Title 15, Sec. 323) it was the province of the jury to find the defendant guilty of any offense inferior to the crime charged which is necessarily included in the offense charged in the indictment. Hence the jury in this case was authorized and empowered to return the following verdict, which they did. Viz: "We the jury, find the defendant guilty of an assault and battery, as embraced in the charge of the indictment, and for punishment assess against him a fine of $500.00.",

It is disclosed, by the undisputed evidence, that the alleged injured party "Nell Maddox" was the wife of the defendant, and had been married to him about four years. They had two small children. Mrs. Maddox was a small woman and weighed about 100 lbs. Her husband, the defendant was six feet tall and weighed about 185 pounds.

The evidence as to the commission of the offense complained of by the defendant, the basis of this prosecution, is without dispute or conflict. It tends to show that the assault committed by him on his wife, the mother of his children, was aggravated in the extreme, and was cruel, unmerciful, and highly dangerous. It was also wholly unprovoked and uncalled for. As to this Mrs. Maddox testified in substance:

"My name is Mrs. Nell Maddox, Rucker, or Rooker, Maddox is my husband. We have been married nearly four years. Last year I had a difficulty with him. * * * It was about four o'clock in the daytime. It was daylight. I lived there in his mother's house. Well, he had been to town that morning, and he come in and started talking to his mother and his brother, and said he was feeling fine. He was drunk, of course. * * * And my baby woke up and called its daddy—a little boy. As to how the trouble started between me and him, he just started to fussing. * * He just jumped at me and knocked me down. I stayed there at that house. We lived with his Mother. When the officers got there, I could not walk. They had to carry me in the house. * * * The officers carried me in the house. They had a doctor to attend on me. That was Dr. Shepherd. I went up to my father's from there. I left the same day, just a few hours after it happened. After I got up there to my father's house I was not able to walk around. I stayed in bed about two weeks, wasn't able to move."

The above testimony was fully corroborated by several witnesses. Deputy Sheriff Wilson, who arrested the defendant on that occasion, testified among other things that:

"I had seen Rucker Maddox beating his wife, or hitting her, I had seen her fall; I seen him hit her, and seen her fall. * * * About the time we got out of the car, he struck her. It looked like he hit her about the face. He hit her with his

fist. * * * She was there, lying on the ground. I looked at her, picked her up. Up over her eyes here was all beat up, and her eyes was all blacked up and all puffed up, and her mouth was bleeding and her legs skinned from her knees on down. I say she was lying on the ground. She did not get up. I got hold of her and picked her up. She was just as limber as could be. Me and Mr. Killingsworth picked her up and took her in the house and laid her on the bed. She is a small woman—looked like she would weigh about 100 pounds. When we got there, Rucker was standing up there with his hand on a sapling and standing there panting. * * * He looked like he was mad to me, and talked like it."

Dr. Shepherd, who attended and treated Mrs. Maddox, testified in detail as to her bruised and bleeding condition. His testimony is in line, as to this, with the testimony hereinabove quoted. In addition he stated: "Licks of a strong man hitting a woman on the head with his fists, hard licks, several licks, might produce death; it depends on the location where he hits. It might produce death even with your fists. You sometimes have fracture of the skull from a lick of that kind, or concussion of the brain. In concussion sometimes blood runs out of the nose, mouth and ears."

The defendant testified in his own behalf and stated:

"My name is Rucker Maddox. I am the defendant in this case. On the day that I had this difficulty with my wife, I was down at Carbon Hill. I had been drinking that day. * * * I do not remember when I got home. I don't remember anything except when they taken me to jail and when they was taking the handcuffs off of me. * * * I remember them doing that, but I don't even know which one of them did that. I don't remember going home and telling my people that I felt fine. I have been married about three or four years. I don't remember slapping one of my children on that occasion. I don't remember slapping one of them and my wife telling me to let him alone. I don't know whether I jumped on her, got her down on the bed, beat her on the head with my fist, and grabbed her head and shook it back and forth. I don't know whether or not I hit her in the face with my fist and bruised up her eyes, and things like that, or not. I don't say that I did or did not. * * * I mean if I did these things, I don't remember it. So far as I know, I didn't do them. If I did, I know nothing about it."'

From the view we take of this case we are of the opinion that the jury was very lenient and merciful in reaching its conclusion.

The record in this case is regular in all respects. There is no error in any ruling of the court upon this trial.

 We gather, of course, from the above-quoted testimony of defendant that he relies upon drunkenness as a defense. Such defense is not available. The law is that voluntary drunkenness is no defense to a charge of assault and battery, unless the degree of intoxication amounts to insanity and renders accused incapable of forming an intent to injure. McGee v. State, 4 Ala.App. 54, 58, 58 So. 1008; Englehardt v. State, 88 Ala. 100, 7 So. 154; Rhodes v. State, 3 Ala.App. 182, 57 So. 1021; Williams v. State, 13 Ala.App. 133, 69 So. 376; Briley v. State, 21 Ala.App. 473, 109 So. 845; Harmon v. State, 23 Ala. App. 468, 126 So. 896.

In the instant case the testimony on the issue of the degree of intoxication of the appellant was in sharp conflict thus presenting a question for the jury to determine. State v. Massey, 20 Ala.App. 56, 100 So. 625; Fonville v. State, 91 Ala. 39, 8 So. 688.

The judgment of conviction, including the sentence of defendant, is hereby affirmed in all things.

Affirmed.