Cosby Linward Hurst was indicted for the murder of Michael Fox. A jury convicted him of manslaughter. Sentence was ten years' imprisonment. Nine issues are presented on appeal.
 I
The defendant argues that the trial judge erred in refusing to instruct the jury on the crimes of criminally negligent homicide, assault, and reckless endangerment as lesser included offenses of the crime charged in the indictment.
The State's evidence was that, shortly after midnight on July 2, 1982, Michael Fox shoved the defendant after the defendant hit his wife, Jody Hurst, who had discovered the defendant sitting with another woman. The defendant and Fox "tangled" and the defendant was seen with a knife. Although there were several people in the apartment at the time, no one saw the defendant actually cut Fox. During this struggle, Mrs. Hurst and the other woman were also engaged in a physical altercation. The defendant's confrontation with Fox was brief. Before the defendant could walk out of the apartment, Fox fell to the floor. He had been stabbed in the heart and cut across the face.
In a statement to the police, the defendant denied having or seeing any knife, but did not deny that he might have cut Fox: "I ain't saying I didn't cut him, because I was agrabbing anything I could." The defendant stated, "[I]f he was cut in the heart, it wasn't cut with a knife — Whatever he had in his hand, because me and him was wrestling and if he had've got cut, he would have got cut in his belly, 'cause we had the knife wrestling down — or whatever it was — down in his belly." * * * "I don't see how in the world he could have been cut up here, unless he fell in the floor and cut hisself on it and fell, because me and him was ascuffling."
In his defense, the defendant attempted to establish that, after he walked away from Fox, Fox and Jeff Lowe began fighting and that it must have been Lowe who stabbed Fox.
The requested charge on criminally negligent homicide was properly refused because there was no evidence that the defendant was acting "negligently" as that term is defined in Alabama's Criminal Code. Alabama Code 1975, §§ 13A-2-2 (4).
It was undisputed that Fox struck the first blow. The State's evidence supports the conclusion that the defendant pursued Fox, who was unarmed, and cut and stabbed him with a knife. The defense tended to show that the unarmed defendant acted only in self-defense and did not even know that Fox had been cut when he left the apartment. "The submission to the jury of manslaughter as a lesser included offense of murder does not necessarily entitle a defendant to a jury charge on criminally negligent homicide as a lesser included offense." Phelps v.State, *Page 722 435 So.2d 158, 166 (Ala.Cr.App. 1983). If the defendant apprehended danger to himself, he had the right to take the knife away from Fox. Wakefield v. State, 447 So.2d 1325, 1326 (Ala.Cr.App. 1983), affirmed, Smith v. State, 447 So.2d 1334 (Ala. 1984). If, while the defendant was trying to defend himself and take the knife away from Fox, Fox was accidentally injured, it would simply be an accident. If the defendant intentionally caused the injury, it would be self-defense, Wakefield, supra, but not criminal negligence.
For these same reasons, the requested charges on assault and reckless endangerment were properly refused. Under the State's evidence, the defendant intentionally caused the death of Fox. Under the evidence presented by the defense, the defendant, while acting in self-defense, may have accidentally injured Fox.
"The accused is entitled to have the trial court charge on lesser included offenses where there is a reasonable theory from the evidence supporting defendant's position, regardless of whether the State or defendant offers the evidence." Exparte Pruitt, 457 So.2d 456, 457 (Ala. 1984). However, "[t]he court shall not charge the jury with respect to an included offense unless there is a rational basis for a verdict convicting the defendant of the included offense." Alabama Code 1975, § 13A-1-9.
 II
The trial court properly refused to charge on insanity. "Intoxication in itself does not constitute mental disease or defect within the meaning of section 13A-3-1." Alabama Code 1975, § 13A-3-2 (d). Although there was some testimony that the defendant was highly intoxicated, there was no indication that the defendant lacked either the "capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law." Alabama Code 1975, § 13A-3-1. "Requested charges submitting the defense of insanity to the jury are properly refused where there is no evidence tending to show that the accused was insane." Young v. State, 428 So.2d 155,160 (Ala.Cr.App. 1982). We note that the trial court did instruct the jury on intoxication. Although intoxication may be so extreme as to render one insane, Maddox v. State,31 Ala. App. 332, 334, 17 So.2d 283 (1944), there was no evidence that the defendant was that intoxicated in this case.
 III
It is alleged that the trial court erred in giving a confusing and erroneous oral instruction on the burden of proof.
In instructing the jury, the trial judge did state that "[y]ou cannot convict if there is a probability that the defendant is innocent." This was proper. Fleming v. State,150 Ala. 19, 43 So. 219, 221 (1907). "As we understand it, the better rule expressed and obtaining is that the jury should acquit if there is from the evidence a probability of innocence, and such charge is generally held proper." Wilson v.State, 243 Ala. 1, 21, 8 So.2d 422 (1942); Blalock v. State,369 So.2d 35, 37 (Ala.Cr.App.), cert. denied, Ex parte Blalock,369 So.2d 38 (Ala. 1979).
We have reviewed the entire oral charge of the trial judge on this issue and find no error. Even "where a portion of the oral charge is erroneous, the whole charge may be looked to and the entire charge must be construed together to see if there be reversible error." Gosa v. State, 273 Ala. 346, 350,139 So.2d 321 (1961).
 IV
Again, construing the court's charge in its entirety, we find that the trial court did not misstate the defendant's burden to prove self-defense. The court accurately stated that "[t]he State has the burden of convincing you beyond a reasonable doubt and to a moral certainty that the defendant was not acting in self-defense."
 V
The defendant complains of the trial court's failure to provide the defense access *Page 723 
to State-prepared statements or tape recordings of Judy Castillo. We find no error.
The defendant's reliance on Jencks v. United States,353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103 (1957), is misplaced as that case applies only to federal prosecutions. Sanders v. State,278 Ala. 453, 457, 179 So.2d 35 (1965).
The record shows that the State produced for the defendant the only tape recording of the interviews it had with Ms. Castillo, who was called as a witness by the defense. The defendant had actual knowledge of Ms. Castillo's favorable testimony for the defense and called her as a witness at trial. Under these circumstances, we fail to see how any alleged nondisclosure harmed the defendant. Prosecutors have no duty under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194,10 L.Ed.2d 215 (1963), to disclose evidence available to the defense from another source. Fulford v. Maggio, 692 F.2d 354, 357 (5th Cir. 1982), reversed on other grounds, 462 U.S. 111, 103 S.Ct. 2261,76 L.Ed.2d 794 (1983); United States v. Bruner, 657 F.2d 1278,1288 (D.C. Cir. 1981); United States v. Iverson, 648 F.2d 737,739 (D.C. Cir. 1981); United States v. Steffen, 641 F.2d 591,594-95 (8th Cir.), cert. denied, 452 U.S. 943, 101 S.Ct. 3091,69 L.Ed.2d 959 (1981).
Even if the State did fail to produce the requested Brady
information, a reversal is not required because the nondisclosure would not have affected the outcome of the trial.United States v. Agurs, 427 U.S. 97, 104, 96 S.Ct. 2392, 2397,49 L.Ed.2d 342 (1976); United States v. Shields, 675 F.2d 1152,1159-60 (11th Cir.), cert. denied, 459 U.S. 858, 103 S.Ct. 130,74 L.Ed.2d 112 (1982).
 VI
The defendant predicates error on the trial judge's failure to admit into evidence a knife marked Defense Exhibit 8. At trial, the defense attempted to show that Jeff Lowe purchased a knife from Jeff Dukes on the afternoon of the day before the homicide occurred.
Although defense witness Richard Stephenson testified that he saw a knife in Lowe's hand when Lowe and Fox were fighting, that particular knife was never described or identified. The defense was unable to establish either that Dukes had sold the knife or that Lowe had obtained it. Defense counsel argued that the knife was admissible because it had been "placed in the position to be controlled by those people on that very day."
The trial judge initially admitted the knife but, after the State's immediate objection, excluded it when the defense failed to connect it to the homicide. This exclusion was proper.
Only conjecture and speculation support any inference that the knife with which Lowe allegedly stabbed Fox was the same knife he allegedly purchased from Dukes earlier in the evening. Dukes never testified and Lowe was not questioned about that knife.
"Weapons or other instruments of crime which are so connected with the crime charged as to throw light thereon, or as to which it is reasonable to infer that they were used in committing it, are admissible, provided they are in substantially the same condition as at the time of the offense." 22A C.J.S. Criminal Law § 712 (a) (1961).
There was no testimony that Defense Exhibit 8 was similar to any knife seen at or near the scene of the crime. It was properly excluded. Kerr v. State, 31 Ala. App. 203, 205,14 So.2d 256 (1943). See also Anderson v. State, 362 So.2d 1296,1302 (Ala.Cr.App. 1978).
 VII
A related issue concerns the prosecutor's comment on the knife during his closing argument. After the prosecutor had finished his closing argument and the jury had been recessed, defense counsel moved for a mistrial "based on the District Attorney in his argument to the jury waving *Page 724 
before the jury and referring to a knife marked Defendant's Exhibit 8."
The record does not reflect exactly what the prosecutor said. The trial judge stated, "My recollection is that you did pick the knife up and exhibit it to the jury and state that this was not evidence in the case; the Court did not allow it to be admitted." The prosecutor argued that his comment was merely a response to argument by defense counsel. From the record, this Court cannot determine "`with reasonable certainty what was said in the court below.'" Jones v. State, 460 So.2d 1382, 1383
(Ala. 1984). Without that basis, we have no ground for error.
A mistrial is a drastic and extreme measure which should be granted only when the prejudicial qualities of the comment cannot be eradicated by instruction or other action by the trial court. Nix v. State, 370 So.2d 1115, 1117 (Ala.Cr.App.), cert. denied, Ex parte Nix, 370 So.2d 1119 (Ala. 1979). From the record, it does not appear that the trial judge abused his discretion in denying the request for a mistrial.
 VIII
In his motion for new trial, the defendant alleged that juror Carlton Marks failed to reveal on voir dire that he knew State's witness Sandra Fox, the wife of the deceased.
The voir dire of the venire is not contained in the record. Mrs. Fox was not in the courtroom during the voir dire.
At the hearing on the motion for new trial, juror Marks testified that during the trial he recognized Mrs. Fox as "a person that I had seen at school." When he was a senior in high school, Mrs. Fox was in the eighth grade. He testified that they were not personal friends, and that he based his verdict "strictly on the evidence presented."
Mrs. Fox testified that she went to school with Mr. Marks but "didn't know him."
"[T]he proper inquiry for the trial court on motion for new trial, grounded on allegedly improper responses or lack of responses by prospective jurors on voir dire, is whether this has resulted in probable prejudice to the movant." Freeman v.Hall, 286 Ala. 161, 166, 238 So.2d 330 (1970), quoted in Exparte O'Leary, 438 So.2d 1372, 1375 (Ala. 1983). The record shows no probable or possible prejudice to the defendant. The motion for new trial was properly denied.
 IX
The defendant argues that the trial judge's demeanor and actions denied him a fair trial, specifically the judge's action in conducting a pretrial hearing in his absence and in requiring the defense to begin the presentation of the case at 8:30 in the morning instead of the usual 9:00.
For some reason, defense counsel did not learn or was not informed that his motion to produce had been scheduled for a hearing. When counsel failed to appear, the trial judge asked the District Attorney if he had any objection to the motion but did not do anything "conclusive" and did not enter an order "one way or another." At a later date and before trial, a hearing was held on the discovery motion.
With regard to the starting time, after hearing the argument of defense counsel, the judge withdrew his prior order and permitted court to begin at the usual time.
While the record does disclose some misunderstanding between defense counsel, the trial judge, and even the prosecutor, it appears, from the record, to be no more than that not uncommonly encountered by vigorous advocates in the course of a hotly contested murder trial. We were not present and are bound by the record. In this regard, we must be guided by the judgment of the trial judge.
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.
[EDITORS' NOTE: PAGES 725-730 CONTAINED DECISIONS WITHOUT PUBLISHED OPINIONS.] *Page 1262