The appellant, David Ray Duren, appeals the denial of his Rule 20, A.R.Crim.P.Temp., petition. In 1984, the appellant was sentenced to death for the 1983 robbery and murder of Kathy Bedsole. We remanded appellant's case for written findings of fact relating to the punishment phase of the trial. Duren v.State, 507 So.2d 111 (Ala.Cr.App. 1986). On return to remand, we affirmed appellant's conviction, as did the Alabama Supreme Court. Ex parte Duren, 507 So.2d 121 (Ala. 1987). The United States Supreme Court denied certiorari in 1987. Duren v.Alabama, 484 U.S. 905, 108 S.Ct. 249, 98 L.Ed.2d 206 (1987). Appellant filed the current petition in 1988.
The evidence established at trial that on the night of October 20, 1983, the appellant robbed and killed Kathleen Bedsole. The appellant confessed twice to killing Miss Bedsole. The appellant and another individual approached Bedsole's car and told her and her companion to get in the trunk of the car. While the victim and Charles Leonard were in the trunk, the appellant and co-defendant drove to a fast food restaurant and robbed the employees of the restaurant. The appellant then drove the car to a deserted area, took the victim and Leonard out of the trunk and shot and killed Bedsole while she and Leonard were tied together. Four more shots were fired, three of which hit Charles Leonard. Prior to shooting Miss Bedsole, the appellant took two $20 bills from her purse. The appellant was tried and convicted of the murder of Bedsole, which was made capital by the fact that she was killed during a robbery.
Appellant raises many issues on appeal concerning the effectiveness of his trial counsel. The United States Supreme Court case of Strickland v. Washington, 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), sets the standard for evaluating counsel's performance. A two-pronged test is used. "First, the defendant must *Page 362 
show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense." Strickland, 466 U.S. at 687,104 S.Ct. at 2064. The attorney must render "reasonably effective assistance." The appellant must show that his counsel's performance was unreasonable, considering all of the attendant circumstances. The Supreme Court went on further to say that "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 690, 104 S.Ct. at 2066.
 "When a defendant challenges a death sentence such as the one at issue in this case, the question is whether there is a reasonable probability that, absent the errors, the sentencer — including an appellate court, to the extent it independently reweighs the evidence — would have concluded that the balance of aggravating and mitigating circumstances did not warrant death."
Strickland v. Washington, 466 U.S. at 697, 104 S.Ct. at 2069.
 I
Appellant initially contends that his trial counsel was ineffective in relying on a defense that was without basis in law. As we stated in the opinion written on appellant's direct appeal: "This case is unique in that the defendant admitted that the State's evidence was undisputed except on the issue of whether or not the defendant intended to shoot Miss Bedsole."Duren v. State, 507 So.2d at 112. Appellate counsel relied on the defense that Duren did not intend to shoot Miss Bedsole, but rather, intended to shoot her friend Charles Leonard. Attorney Appell testified at the Rule 20 hearing that he knew about the doctrine of transferred intent and that he knew this was not a valid defense. He was hoping that the jury would not find the specific intent necessary for capital murder and, thus, would convict the appellant of regular murder. The trial court made the following findings in regard to this issue:
 "When he made this argument, Appell knew that, due to the doctrine of transferred intent, this was not a legally valid defense. Appell presented this defense for several reasons. First, it had been raised by Duren in his confession. Second, after investigation, Appell knew that the prosecution's case was overwhelming and Duren's chances of acquittal or conviction of a lesser included offense were extremely small. Third, Appell knew that, even if this position was not a valid legal defense, a verdict based on this defense would still benefit Duren.
 "Appell's decision was not unreasonable. The prosecution's case was overwhelming. Appell had rejected intoxication as a defense because he thought Duren's claim was not credible and that such a defense would only prejudice a jury against his client."
The appellant argues that his trial counsel violated Disciplinary Rule 7-102(A)(2), Code of Professional Responsibility of the Alabama State Bar, which states that "a lawyer shall not knowingly advance a claim or defense that is unwarranted under existing law, except that he may advance such claim or defense if it can be supported by good faith argument for an extension, modification, or reversal of existing law." However, a violation of the Disciplinary Rules does not automatically mean that the appellant lacked effective assistance of counsel.
As the Supreme Court stated in Strickland, the A.B.A. Rules are only "guides to determining what is reasonable. . . . No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant."Strickland, 466 U.S. at 688-89, 104 S.Ct. at 2065.
In the current case, appellant's trial counsel was faced with overwhelming evidence of the appellant's guilt. The appellant had twice confessed to killing the victim. There was also the eyewitness testimony of Charles Leonard, who identified Duren as the individual who shot and killed *Page 363 
Miss Bedsole. The prosecution had a very strong case against the appellant. Thus, we cannot say that Appell's conduct was unreasonable under the circumstances of the instant case. Appell had been practicing law for approximately 10 years at the time of trial and about half of his practice at the time of this trial had been criminal work. He had also represented five defendants prior to the appellant who faced the death penalty. After taking all of the facts into consideration, we agree with and quote the trial judge in saying that "Appell's decision was not unreasonable."
 II
The appellant next argues that his counsel was ineffective in failing to develop a defense based on intoxication at the time of the crime. Appell testified at the Rule 20 hearing that he did not raise this as a defense because he thought that the appellant was not telling the truth when he said that he had been taking drugs and also because he thought that this defense would be more prejudicial to the defendant than helpful to him since there was an intense dislike for drugs in the area. Appellant contends that his trial counsel rejected the intoxication defense without investigation. Appell's testimony showed that some investigation was made prior to his decision not to rely on intoxication as a defense. For the reasons stated above, Appell stated that he decided that the appellant would be better off not using that defense.
Even if no substantial investigation had been made, we would still hold that counsel was not ineffective. The federal courts have adopted a three-pronged test to determine if "a decision to forgo a plausible line of defense without substantial investigation was reasonable under the circumstances."Gates v. Zant, 863 F.2d 1492, 1498 (11th Cir. 1989), cert. denied, 493 U.S. 945, 110 S.Ct. 353, 107 L.Ed.2d 340 (1989). See also, Birt v. Montgomery, 725 F.2d 587 (11th Cir. 1984), cert. denied, 469 U.S. 874, 105 S.Ct. 232, 83 L.Ed.2d 161
(1984). The first factor looks at the attorney's "experience and general awareness that the rejected line of defense was available." The second factor looks at the overall defense strategy, and the third factor looks at the "foreseeable prejudice that might have resulted had the defense not been rejected." Gates v. Zant, 863 F.2d at 1498.
These factors give some guidance when evaluating Appell's decision not to raise intoxication as a defense. The initial inquiry takes into account the attorney's experience with criminal cases. "The more experienced an attorney is, the more likely it is that his decision to rely on his own experience and judgment in rejecting a defense without substantial investigation was reasonable under the circumstances."Gates v. Zant, 863 F.2d at 1498. As stated earlier, Appell had practiced for approximately 10 years prior to the trial of the appellant. Approximately half of his practice was comprised of criminal work. He also had been involved in five prior death penalty cases. We can say that Appell's decision was the "conscious decision of an experienced criminal defense lawyer."Gates v. Zant, 863 F.2d at 1499.
Second, the intoxication defense did not fit into Appell's overall defense strategy. Third, the jury could have been more prejudiced against the appellant if they chose to ignore his defense of intoxication. Furthermore, the testimony as to whether the appellant had been drinking is at the very least inconsistent. A defense witness testified at the Rule 20 hearing that the appellant was intoxicated on the night of the murder and also had taken LSD. During the trial, this witness stated that she had only seen the appellant several days prior to the murder. The trial court found this witness's testimony not to be credible. One witness did testify at the hearing that he was with the appellant on the night of the murder and that the appellant had been drinking and had smoked some marijuana. We also have the confession of the appellant, which shows that the crime was well thought out and required concentration. The appellant presented two experts, who based their testimony on information predominantly from the appellant and a prior DUI arrest, who stated that the appellant was intoxicated at the time of the murder and robbery. The state presented the testimony *Page 364 
of the two arresting officers, who said that they observed no evidence that the appellant had been drinking prior to his arrest. Thus, evidence that the appellant was intoxicated was contradictory. Appell chose not to raise this as a defense. We cannot say that this was unreasonable or resulted in prejudice to the appellant.
Moreover, as the state points out, simple intoxication is not a defense to a crime. "The degree of intoxication necessary to negate specific intent and, thus, reduce the grade of an offense must amount to 'insanity.' " Maddox v. State,31 Ala. App. 332, 334, 17 So.2d 283, 285 (1944). The very facts of the crime itself do not support this hypothesis.
 III
The appellant next contends that his trial counsel was ineffective in failing to make objections to some of the evidence being presented. Initially, he states that trial counsel failed to object to the introduction of pictures of the victim's body that were made after the crime and after the autopsy. " 'Effectiveness of counsel does not lend itself to measurement by picking through the transcript and counting the places where objections might be made.' " Stringfellow v.State, 485 So.2d 1238, 1243 (Ala.Cr.App. 1986). Appell stated that he did not object because, he says, he thought the photographs would be admissible. Appellant argues on appeal that since the cause of death was undisputed and the photographs were grisly, they should not have been allowed into evidence. However, as this court has stated in the past, "photographic exhibits are admissible even though they may be cumulative, demonstrative of undisputed facts [citation omitted], or gruesome [citation omitted]." Hopkins v. State,429 So.2d 1146, 1157 (Ala.Cr.App. 1983). Appell's decision not to object was not unreasonable.
The appellant also argues that his trial counsel was ineffective in failing to object to prosecutorial comments made in the closing argument. The prosecutor made the following comment during his closing arguments: "If he wanted to save her life . . . it would have been just temporarily, just temporarily to use her sexually." Appellant argues that his counsel should have objected to these comments because there was no evidence at trial to back up this contention.
We must evaluate the comments made by the prosecutor in the context of the whole trial. The appellant's entire line of defense was the contention that he did not intend to kill the girl but, instead, to kill the young man. "The relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " Darden v. Wainwright, 477 U.S. 168,181, 106 S.Ct. 2464, 2471, 91 L.Ed.2d 144 (1986). "[S]tatements of counsel in argument to the jury must be viewed as delivered in the heat of debate; such statements are usually valued by the jury at their true worth and are not expected to become factors in the formation of the verdict." Bankhead v. State,585 So.2d 97 (Ala.Cr.App. 1989). We cannot say that these comments deprived the appellant of a fair trial.
" 'An accused is not entitled to error-free counsel.' "Stringfellow v. State, 485 So.2d 1238, 1243 (Ala.Cr.App. 1986). "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Strickland v.Washington, 466 U.S. 668, 691, 104 S.Ct. 2052, 2066,80 L.Ed.2d 674 (1984). We cannot say that Appell's failure to object affected the outcome of the trial.
Appellant also argues that his trial counsel was ineffective in failing to object to the following, which occurred in closing argument during the guilt phase:
 "She cries out through her grave through me, through the D.A.'s office and says make me a plus statistic. Use my life for something, to save other lives. And if you will give the proper punishment on this occasion, it will save other lives.
 "Picture, if you will, a chair, an empty chair around some dining room table that *Page 365 
Christmas and the Christmas after. A lot of families and a lot of homes and it's empty, the place for a little daughter. And the family, somebody in the family, sister saying, Mama, I wish Kathy were here. Some of the family. And the mama having to say, that's all right, Sis. There was a jury back in Birmingham on March the 8th that gave their stamp of approval to this and we have to go by that. Otherwise, your sister would be here today.
A similar argument was also advanced in the punishment phase. The appellant argues that this was inadmissible, since comments concerning the impact of the crime on the family of the victim are not admissible. He bases this contention on Booth v.Maryland, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987).Booth was decided in 1987, approximately three years after this appellant was tried and found guilty of capital murder. Appellant maintains that his trial counsel should have been able to forecast changes in the law. The courts have addressed this issue on many prior occasions and are all in agreement that the failure to object in this situation is not a valid basis for an ineffectiveness-of-counsel claim. Funchess v.Wainwright, 772 F.2d 683 (11th Cir. 1985), cert. denied,475 U.S. 1031, 106 S.Ct. 1242, 89 L.Ed.2d 349 (1986). "Reasonably effective assistance of counsel cannot and does not include a requirement to make arguments based on how the law may develop." Elledge v. Dugger, 823 F.2d 1439, 1443 (11th Cir.), modified on other grounds, 833 F.2d 250 (11th Cir. 1987), cert. denied, 485 U.S. 1014, 108 S.Ct. 1487, 99 L.Ed.2d 715 (1988).
Furthermore, references to the impact of the crime on the family of the victim are not automatically viewed as prejudicial. See Byrne v. Butler, 845 F.2d 501 (5th Cir. 1988).
 IV
The appellant next argues that his trial counsel was ineffective at the sentencing phase of his trial in failing to offer evidence in mitigation of the offense. Appellant argues that his counsel was ineffective in failing to present, at the sentencing phase, evidence of his substance abuse and psychological problems at the time of the murder. Appell's decision not to present evidence of the appellant's involvement with drugs was sound trial strategy, as discussed above. Thus we need only discuss Appell's decision not to present psychological evidence at the sentencing phase. The appellant was psychologically evaluated prior to his trial. Appell made a motion for additional funds for further evaluation and it was denied. Appellant initially argues that his trial counsel erred in not supporting his motion with further information. Appell testified at the Rule 20 hearing that he believed that the information given to him by the doctor who evaluated the appellant was not helpful. Appellant's own doctor testified at the Rule 20 hearing that the mental condition that could have affected him on the night of the murder was his intoxication. This doctor and another who testified at the Rule 20 hearing were basing their belief that the appellant was drunk on the night of the murder on information obtained from the appellant himself. The following occurred at the Rule 20 hearing:
 "Q — I think I understand. And if you are wrong and Mr. Duren wasn't intoxicated on that night, then there was nothing particularly mitigating insofar as his mental condition, right?
 "A — I would have to say that that was probably true."
From the testimony at the hearing, it appears that appellant's psychological claim is tied in with his substance abuse. "Failure to present psychiatric evidence in mitigation does not necessarily constitute ineffective assistance of counsel." Floyd v. State, 571 So.2d 1221 (Ala.Cr.App. 1989),rev'd on other grounds, 571 So.2d 1234 (Ala. 1990).
As the Supreme Court stated in Strickland v. Washington, supra, when evaluating a decision to not present a defense, an investigation must take place. "The scope of the duty, however, depends on such facts as the strength of the government's case and the likelihood that pursuing certain *Page 366 
leads may prove more harmful than helpful." Strickland v.Washington, 466 U.S. at 680-81, 104 S.Ct. at 2061.
Furthermore, the appellant has failed to show that he was prejudiced by the lack of psychological evidence regarding his substance abuse. There was overwhelming evidence of the appellant's guilt. We cannot say that this evidence would have affected the outcome of the trial. See Cochran v. State,548 So.2d 1062 (Ala.Cr.App.), cert. denied, 493 U.S. 900,110 S.Ct. 259, 107 L.Ed.2d 208 (1989). " 'A lawyer's election not to present mitigating evidence [after sufficient investigation] is a tactical choice accorded a strong presumption of correctness which is "virtually unchallengeable." ' " Cochran v. State,548 So.2d at 1073.
 V
The appellant further argues that Appell erred in making several statements in his closing arguments that could have been viewed negatively by the jury. Appell made one reference to his being appointed. After Appell stated this, the prosecuting attorney objected and the trial judge instructed the jury to disregard the comment. It is clear from the prosecution's objections that this comment did not appear to be harmful to the defendant's case. This mere reference, given the immediate instructions to disregard, simply did not rise to the level of the situation in King v. Strickland, 714 F.2d 1481
(11th Cir. 1983), vacated and remanded, 467 U.S. 1211,104 S.Ct. 2651, 81 L.Ed.2d 358 (1984), on remand, 748 F.2d 1462
(11th Cir. 1984), cert. denied, 471 U.S. 1016, 105 S.Ct. 2020,85 L.Ed.2d 301 (1985), where trial counsel took great pains to emphasize that he had been appointed to represent the defendant. Accordingly, this brief remark did not result in prejudice to the appellant.
The appellant next argues that Appell's reference to his being "lost" and the phrase "had Duren been merciful, no trial would have been necessary" resulted in prejudice to him. When taken out of context these quotes seem offensive. We must evaluate these statements in the context of the entire closing argument. These statements were consistent with the defense that Appell presented. Appell put his client at the mercy of the jury. After an evaluation of counsel's closing argument and a review of the facts of the case, we cannot say that this conduct resulted in prejudice to the appellant. The trial court thoroughly instructed the jury that it should consider only evidence from the witness stand in reaching its verdict.
The comments of which appellant complains were made by his attorney in the following context:
 "Mr. DeCarlo has said it and Mr. McDonald has said it, that David Duren showed absolutely no mercy to Kathy Bedsole or Chuck Leonard that night and there is no question about it because, if he had showed mercy, if he had been a merciful person, we wouldn't even be here today. We wouldn't be here. But is mercy only given to the merciful? Do you only show mercy to those who have been merciful?"
 "I believe as most of you or — all of you said that you were members of different denominations. I believe that the ultimate mercy comes to us as you know through God. God teaches us about mercy.
 "Now, Jesus has said he who's without sin cast the first stone. That's a Bible saying and I guess we have all heard it, but we all know what it means. It says we are all sinners and we have all done wrong in out lives. Jesus showed mercy, and we are asking you to show mercy not because he showed mercy to someone else. So that we, too, can move towards a merciful existence.
 "You have the most awesome duty and power that any human beings can have because you as human beings now have the power of life and death. And I ask you to follow the tenets and the teachings of Jesus Christ and God when he says be merciful. That's not an easy thing to do because we are human beings and our emotions as Mr. DeCarlo stated and Rusty will get up there and state to you is to kill, to revenge. Revenge is so *Page 367 
easy. And it's so easy to be a revengeful [sic] person.
". . . .
 "David is looking at spending forty-four years, a minimum of probably forty-four years if he lives to sixty-five in the penitentiary. That's five hundred and twenty-eight months. That's sixteen thousand and sixty days in jail. The only relief that he can look forward to is death of old age or whatever. That's day after day after day after day locked up, no relief in sight, no sunny afternoon in the park, no family, no friends in life and a living hell, and he deserves it. He deserves it. He took another human being's life intentionally. We have all found that to be true. He already confessed to that.
 "But to electrocute him would not solve any problems and not end the killings. And I have asked — I asked you at the beginning and I'm going ask you again for mercy, to be Godlike, to show David something that he did not show Kathy Bedsole, to show the world that we are not going to kill for killing's sake because it solves no problems and it does not answer, gives no answer.
". . . .
 "I mean, I can't argue with Rusty about the fact that this was a horrible crime. I can't argue with him about that. I can't argue with him because it is true. It's correct. It was a horrible crime. It was a miserable crime. A sixteen year old girl has no reason to die like this or any reason. But yelling and screaming and jumping up and down and saying that revenge is sweet and let's do it doesn't bring Kathy back. It's not going to stop anything."
When viewed in context, these statements show the eloquent argument of appellant's counsel to show mercy. We do not evaluate a trial lawyer's performance using hindsight. SeeStrickland v. Washington, supra. An appellant is entitled to " 'not errorless counsel, and not counsel judged ineffective by hindsight, but counsel reasonably likely to render and rendering reasonably effective assistance.' " Haggard v.Alabama, 550 F.2d 1019, 1022 (5th Cir. 1977). Appell chose to rely on a plea-for-mercy defense at the sentencing phase. This choice required that defense counsel respond to some of the prosecution's statements. We do not find defense counsel's remarks to "underscore the horror of the crime," as did the argument in King v. Strickland, supra, 714 F.2d at 1491, but rather to respond to the prosecutor's exhortations to the jury not to show mercy to the defendant. Appell's plea for mercy was not unreasonable under the circumstances. For a similar case see, Darden v. Wainwright, supra.
 VI
The appellant next argues that the trial court erred in excluding certain evidence from the Rule 20 hearing. Initially, he argues that the court erred in excluding the transcript testimony of a person, now deceased, concerning the appellant's substance abuse. This is clearly inadmissible. See § 12-21-163,Code of Alabama 1975.
Appellant also argues that the trial court erred in excluding the testimony of experts about the opinions of other experts. We have recently reversed a case on this very issue. An expert can not testify by relying on the opinions of other experts. See Bailey v. State, 590 So.2d 351 (Ala.Cr.App. 1990).
 VII
The appellant next argues that his trial counsel erred in failing to object to the following instruction given during the punishment phase of his trial:
 "Whatever decision you will make will be advisory only. Having returned a verdict of guilty of the capital offense, the only punishment for a capital offense in the state of Alabama is by death by electrocution or life imprisonment without parole. Any verdict that you would arrive at as to the punishment in this sentence hearing is advisory only, and I will read to you in a few moments the actual statute that sets up this and explain it to you as we go." *Page 368 
Appellant argues that this diminished the role of the jury and lulled it into believing that its role was unimportant. A review of the punishment phase jury instructions clearly shows that the trial court correctly instructed the jury on its role in the sentencing process. No error occurred in the above instruction.
 VIII
We adopt the trial court's findings of fact in regard to appellant's remaining issues. The trial court stated:
"PROCEDURALLY BARRED CLAIMS
"Claims Which Were Raised on Appeal
 "Two of the claims raised in the Rule 20 petition were raised and addressed on appeal from Duren's conviction and death sentence:
 "1. Petitioner's sentence was imposed in violation of his constitutional right to due process of law, where petitioner's motion for a new jury sentencing hearing was denied following the recusal of the trial judge.
 "6. Petitioner was denied his due process right to the assistance of a defense psychiatrist.
 "See, Duren v. State, 507 So.2d 111 (Ala.Cr.App. 1986), aff'd, 507 So.2d 121 (Ala. 1987). Claims which were raised on appeal are barred from further review. Temporary Rule 20.2(a)(4), Alabama Rules of Criminal Procedure; Ex parte Rudolph, 276 Ala. 392, 393, 162 So.2d 486 (1964); Richardson v. State, 419 So.2d 289 (Ala.Cr.App.), cert. denied, No. 81-937 (Ala. 1982); Summers v. State, 366 So.2d 336, 340 (Ala.Cr.App. 1978), cert. denied, 366 So.2d 346 (Ala. 1979).
 "Claims Which Could Have Been But Were Not Raised At Trial
 "Five of the claims in the Rule 20 petition could have been but were not raised at trial:
 "2. Petitioner's sentence was imposed on consideration of impermissible victim impact evidence, in violation of his right to due process and his Eighth and Fourteenth Amendment right against cruel and unusual punishment.
 "3. Petitioner's sentence was imposed in violation of the Eighth and Fourteenth Amendment prohibition against mandatory sentencing schemes, because the trial court instructed the sentencing jury it was required to return a verdict of death if aggravating evidence outweighed mitigating evidence.
 "4. Petitioner's sentence was imposed without review of its proportionality in relation to the punishment of similar crimes throughout the state, in violation of Alabama law and petitioner's right to due process.
 "10. Petitioner's sentence was imposed in violation of the Eighth and Fourteenth Amendments because the trial court improperly instructed the jury as to its role in the sentencing process.
 "11. Petitioner's sentence was imposed in violation of the Eighth and Fourteenth Amendments because the Alabama mandatory sentencing statute is unconstitutional.
 "Claims which could have been raised at trial, and then on direct appeal, but were not are barred from further review. Temporary Rule 20.2(a)(3) 
(5), Alabama Rules of Criminal Procedure; Ex parte Ellison, 410 So.2d 130, 132 (Ala. 1982); Magwood v. State, 449 So.2d 1267, 1268 (Ala.Cr.App.), cert. denied, No. 83-1143 (Ala. 1984); Summers v. State, supra.
 "Claims Which Were Raised At Trial But Not On Appeal
 "Three of the claims in the Rule 20 petition were raised at trial and therefore could have been raised on appeal:
 "5. Petitioner's due process rights were violated by the introduction of impermissible evidence of prior offenses during the sentencing hearing. See, TR. 602.
 "7. Petitioner's conviction was obtained by use of confessions coerced from him through physical force and threats, in violation of his Fifth Amendment right against self-incrimination. See, TR. 853, 18-49. *Page 369 
 "8. Petitioner's Sixth Amendment rights were violated by the trial court's denial of his change of venue motion. See, TR. 861."
Appellant also argues that all the issues raised in his Rule 20 petition should be addressed, since, he argues, counsel was ineffective. Since we find that the appellant was afforded a fair trial and competent counsel as provided for by law, we see no need to address this issue. The appellant was afforded "reasonably effective" counsel as required by the Sixth Amendment. No new trial is required.
AFFIRMED.
All the Judges concur.